C. Moze Cowper (CA Bar No. 326614)
mcowper@cowperlaw.com
Noel E. Garcia. (CA Bar No. 326831)
ngarcia@cowperlaw.com
**COWPER LAW PC**
10880 Wilshire Boulevard, Suite 1840
Los Angeles, California  90024
Tel.:  877-529-3707

Adam J. Levitt*
alevitt@dicellolevitt.com
Laura E. Reasons*
lreasons@dicellolevitt.com
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Tel.:  312-214-7900

Matthew S. Miller*
mmiller@msmillerlaw.com
**MATTHEW S. MILLER LLC**
77 West Wacker Drive, Suite 4500
Chicago, Illinois  60601
Tel.:  312-741-1085

*Admitted Pro Hac Vice*

***Counsel for Plaintiff and Proposed Class***

### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AKAYLA MILLER, individually and on behalf of all others similarly situated, | Case No.: 2:20−cv−03833−SVW−SK |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY; TIMOTHY WHITE, individually and in his capacity as Chancellor of the California State University, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Akayla Miller ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as more fully defined below), brings this First Amended Class Action Complaint against the Board of Trustees of the California State University and Timothy White, the Chancellor of the California State University ("Defendants"). Plaintiff makes the following allegations upon personal knowledge as to her own acts, and upon information and belief, and her attorneys' investigation, as to all other matters, alleging as follows:

## I.      NATURE OF THE ACTION

1.      Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff and the Class are students living in California, the United States, and other countries who paid mandatory fees earmarked for specified services, materials, and facilities for the Spring 2020 academic semester, term, or quarter[1] at any of the 23 campuses within the CSU system.

2.      This action is based on Defendants' unconstitutional conduct under color of state law.  Specifically, Plaintiff brings this action under 42 U.S.C. §1983 for Defendants' violation of the Takings Clause of the United States Constitution's Fifth Amendment, applicable to the states through the Fourteenth Amendment, and the Due Process Clause of the Fourteenth Amendment.

3.      Plaintiff further brings this action for injunctive, declaratory, and equitable relief resulting from Defendants' illegal, unfair, or deceptive conduct, namely retaining the fees paid by Plaintiff and the other Class members, while ceasing to provide services to Plaintiff and the other Class members for which their fees were paid.

---

[1] For purposes of this Amended Complaint, "semester" also encompasses "term" or "quarter" and means any academic period for which Plaintiff and the other Class members paid fees but experienced a loss of services because of COVID-19.

FIRST AMENDED CLASS ACTION COMPLAINT

4.     Plaintiff alleges that she and the other Class members are required to pay mandatory fees to the CSU campuses each semester.  Said fees are required of all students and are earmarked for specific campus-related purposes each semester.

5.     Due to the COVID-19 pandemic, all of the California State University campuses have been effectively closed and Defendants refuse to provide Plaintiff and the other Class members with refunds of the fees they paid for services, materials, and facilities for the Spring 2020 semester.

6.     As a result of the foregoing conduct, Plaintiff contends that Defendants have unlawfully seized and are in possession of the proceeds from Plaintiff's and the other Class members' payment of the mandatory fees, and that Defendants are illegally withholding this property.

7.     Plaintiff, individually and on behalf of the other Class members, further alleges that Defendants took her property and the other Class members' property for specific purposes and that Defendants have unjustly retained that property, under color of state law, without notice and due process.

8.     When directives from Defendants, and local, state, and federal governments compelled virtually all of the students enrolled in the CSU system to leave campus to avoid exposure to COVID-19, Defendants did not provide any reimbursement to students for these mandatory fees.

9.     Defendants refuse to refund to students, including Plaintiff and the other Class members, the portion of their fees that they paid to cover the cost of certain on-campus services, materials, and facilities which are no longer available to them.

10.     Defendants' failure to provide reimbursements for the mandatory fees that Plaintiff and the other Class members paid affects over 480,000 students who were enrolled and scheduled to attend in-person classes at one of the 23 campuses within the CSU system.

FIRST AMENDED CLASS ACTION COMPLAINT

11.    Plaintiff and the other Class members have been harmed by Defendants' continued retention of that portion of the mandatory fees that rightly belongs to them.  Plaintiff, therefore, requests that the Court resolve these claims.

## II.    PARTIES

### A.    Plaintiff

12.    Akayla Miller is a student at Sonoma State University and a citizen of the State of California.  Ms. Miller paid the cost of fees at Sonoma State University for the Spring 2020 semester.  Plaintiff left campus in mid-March of 2020 and has not returned, in accordance with Defendants' policies and mandates relating to COVID-19. Despite the shutdown of campus and suspension of on-campus activities, Plaintiff has not been provided any refund of any fees that she paid for the Spring 2020 semester.

### B.    Defendants

13.    The Board of Trustees of the California State University ("CSU" or "California State University") was established by the State legislature to oversee CSU's 23-campus system, the nation's largest higher education system.  The CSU system includes campuses in Bakersfield, Channel Islands, Chico, Dominguez Hills, East Bay, Fresno, Fullerton, Humboldt, Long Beach, Los Angeles, Maritime, Monterrey Bay, Northridge, Pomona, Sacramento, San Bernardino, San Diego, San Francisco, San José, San Luis Obispo, San Marcos, Sonoma, and Stanislaus, California.

14.    CSU resides in Los Angeles County, California, with its principal place of business at 401 Golden Shore, Long Beach, California 90802.

15.    CSU is a corporate body that can sue and be sued.

16.    Timothy White holds the position of Chancellor of the Board of Trustees of the California State University, is empowered under Education Code §

89000, *et seq.* and oversees the 23 universities within the CSU system. As Chancellor of the California State University, and a member of the Board of Trustees of the California State University, Defendant "has authority and responsibility to take whatever actions are necessary, consistent with Trustee policy and applicable law, for the appropriate functioning of the institution . . ."[2]

17.     According to the Standing Orders of the Board of Trustees of the California State University, Defendant White ultimately is responsible for "[e]stablishment and oversight of campus fees; establishment, adjustment and oversight of systemwide fees . . ."[3] Defendant, thus, is ultimately responsible for all policies enacted and enforced at each of the 23 universities of the CSU System, including the policy to not refund the mandatory fees as challenged herein.

18.     At all times alleged in this Complaint, Defendants acted under color of state law.

### III.     JURISDICTION AND VENUE

19.     This Court has original jurisdiction over this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§1331, 1343, 2201, and 2202.  This action arises under the "Takings Clause" of the Fifth Amendment, and the Due Process Clause of the Fourteenth Amendment.

20.     Supplemental jurisdiction in this court is proper over the ancillary state law claims under 28 U.S.C. § 1367(a) which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendant's official office is in the judicial district, and pursuant to 28

[2] https://calstate.policystat.com/policy/6593385/latest/ (last accessed June 12, 2020).
[3] *Id.*

U.S.C.§ 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## IV.   FACTUAL ALLEGATIONS

**A.**   **Plaintiff and the Other Class Members Paid Mandatory Fees for the Spring 2020 Semester—These Fees Were Earmarked for Facilities and Services No Longer Available to Them**

22.   Plaintiff and the other Class members are all people who paid mandatory fees at one of the CSU campuses for the Spring 2020 semester.

23.   Each of the fee categories is earmarked for ongoing expenses connected to campus services, facilities, and materials tangential to and distinct from instructional services, which are funded by tuition and the State's General Fund.

24.   Plaintiff's mandatory fees at the CSU campuses for the 2019-2020 academic year, for example, include:

(a)   Health Facilities;

(b)   Health Services;

(c)   Instructionally Related Activities;

(d)   Materials Services and Facilities;

(e)   Student Success Fee;

(f)   Student Association; and

(g)   Student Center.[4]

25.   Depending on campus location, the annual fees paid by Plaintiff and the other Class members for the 2019-2020 academic year ranged from $847 to $4,201.[5]

---

[4] The California State University, Campus Mandatory Fees (2019-20), available at https://www2.calstate.edu/attend/paying-for-college/csu-costs/tuition-and-fees/campus-mandatory-fees (last accessed June12, 2020).

[5] *Id.*

First Amended Class Action Complaint

26.     The fees listed and described in Paragraphs 22 through 25 (above) are provided by way of example; the total amount of fees for which this action seeks disgorgement—which may include other fees that are not listed herein but that were paid by Class members for or on behalf of students at all CSU campuses and not refunded—will be proven at trial.

27.     Like Plaintiff, the other Class members also paid mandatory fees.[6]

28.     On January 21, 2020, at or around the time these mandatory fees for the Spring 2020 semester became due, the first confirmed case of the coronavirus in the United States was reported in Washington State. Within weeks thereafter, both formal and informal measures were taken across the United States to stem the spread of the disease.

29.     In March 2020, several U.S. cities, states, and municipalities began calling for social distancing to slow the spread of COVID-19. Eventually, some cities, states, and municipalities ordered citizens and residents to "shelter-at-home," effectively requiring them to stay home, other than to receive essential services.

30.     Recognizing the severe threat to the population of the State of California, on March 4, 2020, Governor Gavin Newsom issued a Proclamation of a State of Emergency.  The March 4, 2020 Proclamation noted that it was imperative "to implement measures to mitigate the spread of COVID-19" such that "state and local health department must use all available preventative measures to combat the spread of COVID-19."  Following suit, county public health officers across the State of California began implementing stringent guidelines for COVID-19 community-wide mitigation strategies.

31.     On March 13, 2020, the surging global pandemic—which at that point had infected more than 1,000 people in the United States, killing dozens and

[6] For purposes of this action, mandatory fees do not include the cost of tuition or the cost of room and board.

FIRST AMENDED CLASS ACTION COMPLAINT

contributing to over 118,000 infections and 4,291 deaths worldwide—was declared a national emergency by President Donald Trump, echoing the World Health Organization's March 11, 2020 declaration of the disease as a global pandemic.

32.     On March 19, 2020, implementing the most stringent methods yet used to prevent further spread of the global pandemic, Governor Newsom issued an executive order effectively requiring that all California citizens not identified as employees of critical infrastructure sectors stay at home, leaving only to obtain access to necessities, and, even then, at all times practicing social distancing by maintaining at least six feet of distance with others.

33.     Several weeks later, Congress passed the CARES Act in response to the COVID-19 pandemic, providing the State of California with more than $3.8 billion for higher education[7] and the CSU system with over $350 million in aid to cover the costs associated with the COVID-19 disruption.[8]

34.     Students expressed concern that, if they stayed on campus or in student residence halls, the living conditions would threaten their safety, and expose them to COVID-19.

35.     These national, state, and local measures caused on campus services at the 23 CSU campuses to grind to a halt, and CSU officials, including Defendant White, began issuing various mandates to students, requiring them to begin taking all classes remotely and, in most cases, not return to campus, including to their on-campus housing, for the remainder of the Spring 2020 semester.

---

[7] How Much Will States Receive Through the Education Stabilization Fund in the CARES Act? Center on Budget and Policy Priorities (April 3, 2020), https://www.cbpp.org/research/state-budget-and-tax/how-much-will-states-receive-through-the-education-stabilization-fund (last accessed June 12, 2020).

[8] U.S. Dept. of Education, Allocations for section 18004(a)(1) of the CARES Act, available at https://www2.ed.gov/about/offices/list/ope/allocationsforsection18004a1ofcaresact.pdf (last accessed June 12, 2020).

First Amended Class Action Complaint

36.     Subsequently, on May 12, 2020, Defendant issued his statement on the university operational plans in response to the COVID-19 pandemic. In no uncertain terms, Defendant made clear that addressing the pandemic "will result in CSU courses primarily being delivered virtually for the fall 2020 term, with limited exceptions . . ."[9]

37.     Because all classes were moved online, all activities suspended, and facilities closed, there was no reason for students to remain on campus if they had other housing available to them and no reason for students who did not live on campus to come to campus as they had always done to attend class.  This is particularly so in the face of the dangers, risks, and fear associated with the pandemic.  On information and belief, many students chose to leave campus to be closer to their families, or to avoid exposure to COVID-19, and have stayed off campus to comply with directives from California State University, and local, state, and federal governments.

38.     The effect of these COVID-19-related protocols and messaging was that all students—including Plaintiff and the other Class members—were effectively forced to leave campus and were no longer able to make use of campus services and facilities—which, in any event were materially discontinued, if not altogether shut down.  For students who remained on campus because they truly had no other safe place to go, facilities were closed and campus services, if available at all, were extremely limited and substantially different than what had been paid for with the mandatory fees.

---

[9] https://www2.calstate.edu/csu-system/news/Pages/CSU-Chancellor-Timothy-P-Whites-Statement-on-Fall-2020-University-Operational-Plans.aspx (last accessed June 12, 2020).

**B.   After Compelling Plaintiff and the Other Class Members to Leave Campus, Defendants Seized and Are in Possession of Their Property**

39.   Notwithstanding the fact that Plaintiff and the other Class members were forced to leave their campuses through no fault of their own, Defendants have not offered them refunds of their mandatory fees, even though they are no longer able to use the services and facilities for which they paid, and even though the CSU's constituent universities are no longer providing those campus services and facilities.

40.   The resulting impact from the COVID-19 pandemic to the economy—and individual students' and/or their families' wallets—cannot be understated.[10] Rather than acknowledge the difficult financial stresses that COVID-19 has placed on students and their families, Defendants seek to unjustly enrich the CSU system by seizing and retaining fees paid by students and their families.

41.   Despite the constructive eviction of students from campus for the remainder of the Spring 2020 semester and ending all campus activities for at least that same time period, Defendants have not mandated that the universities refund students for their mandatory fees—charges paid solely to cover the cost of certain on-campus services, facilities, and materials which are no longer available to students. Instead, Defendants perpetuated a practice and policy whereby the universities retained the money for their own benefit.

42.   While Defendants have announced that they will return certain room and board costs, they have not provided students and/or their families any refund of the mandatory fees they paid for services, facilities, and materials that were unavailable for the remainder of the Spring 2020 session.

---

[10] George Avalos, Coronavirus Unemployment: California Jobless Claims Top 4 Million, Funds Are Running Dry (May 5, 2020), https://www.mercurynews.com/2020/05/04/coronavirus-unemployment-california-jobless-claims-top-4-million-funds-run-dry-exhaust-deplete-economy-job-layoff-tech/ ("Unemployment claims in California have jumped past the 4 million mark in seven weeks, a grim coronavirus-linked surge that has left the state government fund set up to finance the payment of jobless benefits 'very close' to depletion").

43.     As soon as Defendants announced that classes were moving online and campuses were effectively closing for the remainder of the Spring 2020 session, the mandatory fees should have been promptly returned to Plaintiff and the other Class members, and are now, effectively, held by Defendants for the benefit of the CSU system rather than for the students' benefit, as intended.

44.     Defendants have seized and retained the value of monies paid by Plaintiff and the other Class members for the mandatory fees, while no longer being in a position to provide the services or access to the facilities for which those fees were paid.  This refusal comes despite the fact that students have demanded the return of the unused portions of the mandatory fees that they paid through a number of channels, including through online forums.[11]

45.     In addition, students and/or their families have contacted CSU officials directly and/or left comments on online forums requesting refunds, all to no avail.

46.     Despite these demands, Defendants have stood by their unlawful policy of refusing to make fee refunds to Plaintiff and the other Class members.

47.     Through this lawsuit, Plaintiff seeks—individually and on behalf of the other Class members—an order requiring that Defendants return to the students the pro-rated portion of fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and campus services ceased being provided.  These amounts must be fully disgorged and returned to Plaintiff and the other Class members.  It is inequitable, unfair, and illegal for Defendants to retain these funds.

---

[11] *See, e.g.,* Change.org Petition, Refund of Rec and Student Activity Fees, https://www.change.org/p/csu-refund-of-rec-and-student-activity-fees (over 1,500 individuals have signed) (last accessed June 12, 2020).

**C.     Plaintiff and the Other Class Members have a Constitutionally Protected Common Law Property Right in the Fees They Paid for Services and Facilities No Longer Available to Them**

48.     The Takings Clause of the Fifth Amendment, through the Fourteenth Amendment, prohibits states from taking private property for public use without just compensation.

49.     Core common law property rights that predate the Constitution are protected by the Takings Clause.

50.     The common law for more than 250 years has recognized the property right that an owner of funds held in an account managed by another.[12]

51.     The common law rule is that when monies are paid in anticipation of receiving some service, but circumstances thereafter render it impossible for those services to be provided, the recipient is precluded from unjustly enriching themselves by seizing and retaining the proceeds.

52.     Based on these common law rules protected by the Constitution, Plaintiff and the other Class members have a protected property right in all sums that they paid to the CSU system for which they received nothing in return.

53.     No statute, rule, or practice could authorize Defendants to withhold that property from Plaintiff and the other Class members without violating the Takings Clause of the Fifth Amendment.

54.     Recognizing Plaintiff's and the other Class members' property interest in these funds, on March 25, 2020, Defendants memorialized their "Guiding Principles" concerning the "Interim CSU Refund Policies for Tuition and Fees." The principles—issued under the authority set forth in the Standing Orders referenced in

---

[12] Pursuant to Education Code § 89721, "moneys received in connection with . . . Fees and charges for services, materials, and facilities authorized by Section 89700" must be "deposit[ed] into and maintain[ed] in local trust accounts or in trust accounts . . . or in the California State University Trust Fund." Accordingly, the monies to be disgorged from Defendant in this action are under Defendant's possession and control, as opposed to coming from the State treasury.

Paragraphs 16 through 17 (above) —assert "the CSU has established a systemwide framework to guide local campus decisions concerning the refund of fees charged by the campus."[13] However, with respect to certain the mandatory fees, Defendants summarily state "[r]efunds of other campus fees for materials, services, and facilities will be processed in accord with campus refund policies and procedures." Conversely, for the remaining mandatory fees, the policy provides "other campus mandatory fees will not be refunded except as provided for by campus refund policies and procedures consistent with Title 5 CCR § 41802."

55.    Notwithstanding these principles, in an April 2, 2020 interview, Defendant reneged on the refundable nature of the mandatory fees. After acknowledging the financial strain the pandemic has inflicted upon the student population, Defendant proclaimed these fees "will not be refunded."[14]

56.    Plaintiff's and the other Class members' property remains in Defendants' possession and can readily be returned to them by Defendants directing the return of those funds.

57.    Plaintiff and the other Class members never made a knowing and voluntary waiver of their constitutional right under the Fifth Amendment to the United States to be paid just compensation for the taking of their property right in those funds.

**D.    Defendant's Decision to Seize Plaintiff's and the Other Class Members' Property Lacked Notice and Due Process**

58.    When Defendants elected to seize Plaintiff's and the other Class members' property under the color of state law, they did so without notice or due process.

---

[13] https://calstate.policystat.com/policy/7826195/latest/#autoid-5zara (last accessed June 2, 2020).

[14] https://calmatters.org/blogs/events/2020/04/california-colleges-universities-coronavirus-online-learning/ (last accessed June 2, 2020).

FIRST AMENDED CLASS ACTION COMPLAINT

59.     With respect to the March 13, 2020 interim policy, such policy provides no criteria by which the fees are to be refunded, no requirement that the students are be notified of the refundable nature of these fees, and no mechanism by which claimants may seek a refund. Rather, the policy summarily and vaguely states that any refunds will be processed in accord with campus refund policies and procedures. Such guidance and direction is a far cry from observing and respecting Plaintiff's and the Class' rights to notice and due process on matters that concern their own property interest.

60.     Moreover, Defendants' statements after the policy was issued indicate any effort by students or their families to seek such a refund would be futile.

61.     Devoid of guidance and riddled with contradiction, Defendants' conduct concerning the mandatory fees failed to meet the notice and due process standards set forth in the California and United States Constitutions.

62.     Defendants are obligated to uphold the California and United States Constitutions.  Plaintiff alleges that seizure of the mandatory fees without notice and due process of a citizen's property by appointed officers of the government, such as Defendants, is a gross violation of the law and repugnant to our form of government.

63.     Specifically, Plaintiff, individually and on behalf of the other Class members, alleges that Defendants' conduct violated the California Constitution, Article I, §§ 7, 19, and 20, and the United States Constitution's Fifth and Fourteenth Amendments, the latter of which states that *no state* shall "deprive *any person* of life, liberty, or *property* without due process of law" (emphasis added).

64.     Defendants have no authority, either under the color of the California Education Code or otherwise, to seize property that rightfully belongs to another. *See Taylor v. Westly*, 402 F.3d 924 (9th Cir. 2005); *Suever v. Connell*, 439 F.3d 1142 (9th Cir. 2006); *Fowler v. Guerin*, 899 F.3d 1112 (9th Cir. 2018), *reh'g en banc*

*denied*, 918 F.3d 644 (9th Cir. 2019), *cert. denied*, *Guerin v. Fowler*, No. 18-1545 (U.S., Oct. 15, 2019).

65.     Consequently, Defendants, under the color of state law, have seized and retained property that is beyond their statutory and constitutional authority.  These actions are *ultra vires* and unconstitutional.

## V.     CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action individually and, pursuant to Fed. R. Civ. P. 23(a), (b)(1) (b)(2), (b)(3), and/or (c)(4) for equitable relief and disgorgement on behalf of the Class, defined as:

> All people who paid fees for or on behalf of themselves or other students enrolled in classes at any CSU campus for the Spring 2020 semester, including students and/or their families or guardians who paid fees (the "Class").

67.     Excluded from the Class are the CSU system and any of its respective members, affiliates, parents, subsidiaries, officers, directors, employees (other than students who also work part-time for one of the constituent universities), successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

68.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

69.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The Class members are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff, but may be ascertained from Defendant's records and, based upon

publicly available information, is presumed to be not less than 480,000 people. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

70. **Commonality—Federal Rule of Civil Procedure 23(a)(2); Predominance—Federal Rule of Civil Procedure 23(b)(3).** This action involves questions of law and fact common to the Class, which predominate over any individual questions, including, without limitation:

    a.   Whether Defendants engaged in the conduct alleged herein;

    b.   Whether Plaintiff and the other Class members have a common law property right to the mandatory fees;

    c.   Whether Defendants complied with the Constitutional requirements for seizing and retaining Plaintiff's and the other Class members' property without providing the services that the fees were intended to cover;

    d.   Whether Defendants afforded Plaintiff and the other Class members notice and due process before seizing and retaining their property;

    e.   Whether the Defendants breached their contracts with Plaintiff and the other Class members by retaining fees without providing the services which the fees were intended to cover;

    f.   Whether Defendants were unjustly enriched by retaining fees of Plaintiff and the other Class members without providing the services that the fees were intended to cover;

    g.   Whether Defendants committed conversion by retaining fees of Plaintiff and the other Class members without providing the services that the fees were intended to cover;

h.     Whether certification of the Class is appropriate under Fed. R. Civ. P. 23;

i.     Whether Plaintiff and the other Class members are entitled to prospective declaratory, equitable, or injunctive relief, and/or other relief; and

j.     The appropriate remedy for Plaintiff and the other Class members.

71.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members each paid for fees associated with the Spring 2020 semester at one of the CSU campuses but were not provided the services or access to the facilities that those fees were meant to cover, nor were they reimbursed therefor.  Plaintiff and the other Class members each suffered harm—namely, Defendants retaining their fees and monies paid—as a direct and proximate result of the same wrongful conduct in which Defendants engaged under the color of state law.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the other Class members' claims.

72.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).**  Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class members who she seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.  Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

73.    **Risk of Inconsistent or Varying Adjudications—Federal Rule of Civil Procedure 23(b)(1)(A).**  Because Defendants' duties to comply with the Constitution apply equally to all Class members, the prosecution of separate actions by individual class members would create a risk of inconsistent or varying

adjudications which would establish incompatible standards of conduct for Defendants.

74. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

75. **Certification of Specific Issues—Federal Rule of Civil Procedure 23(c)(4).** To the extent a class does not meet the requirements of Rules 23(b)(1), (b)(2), or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

76. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this action as a class action. The detriment suffered by Plaintiff and each of the other Class members is relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek relief for Defendants' wrongful conduct. Even if the Class members could individually pursue their claims against Defendants, such an approach would pose a crushing burden for the court system. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

# VI.   CLAIMS ALLEGED

## FIRST CLAIM FOR RELIEF

### Declaratory Relief

### Plaintiff and the Other Class Members

77.    Plaintiff repeats and realleges the allegations in Paragraphs 1-76, above, as if fully alleged herein.

78.    Plaintiff brings this claim individually and on behalf of the other Class members.

79.    A real and actual controversy exists between Plaintiff and Defendants concerning Defendants' authority under the Constitutional provisions that guide their office.  Specifically, Plaintiff requires a declaration as to:

(a)    Whether Plaintiff and the other Class members have a common law property interest in the mandatory fees they paid for the Spring 2020 Semester; and

(b)    Whether Defendants unlawfully seized and retained Plaintiff's and the other Class members' property interest in the mandatory fees without notice and due process, in violation of the California Constitution, Article I, §§ 7, 19, and 20, and the United States Constitution, Fifth and Fourteenth Amendments.

80.    The dispute between Plaintiff, individually and on behalf of the other Class members, and Defendants is actual and concrete, and involves a significant burden unilaterally imposed upon Plaintiff and the other Class members, based on the loss of their property without receiving anything in return.

81.    A determination of the parties' rights and duties is necessary and proper at this time so that Plaintiff, individually and on behalf of the other Class members, may ascertain their rights, and establish, as a matter of law, that Defendants have violated their obligations and duties under the above laws such that, based on any

one of the above-described violations, Plaintiff and the other Class members are entitled to the disgorgement and return of either their payment of the mandatory fees or the return of the reasonable value thereof.

## SECOND CLAIM FOR RELIEF
### Violation of 42 U.S.C. § 1983
### Takings and Procedural Due Process
### Plaintiff and the Other Class Members

82.    Plaintiff repeats and realleges the allegations in Paragraphs 1-76, above, as if fully set forth herein.

83.    Plaintiff brings this claim individually and on behalf of the other Class members.

84.    The Due Process Clause of the United States Constitution prohibits the State of California and the governmental agencies that it forms, such as the CSU system, from depriving citizens of a protected property interest without due process of law.

85.    Plaintiff and each of the other Class members had a constitutionally protected property interest in the mandatory fees for the Spring 2020 semester which were earmarked for services and facilities that were not available to them, due to the COVID-19 pandemic.

86.    Defendants took action affecting Plaintiff's and the other Class members' Constitutionally protected property interest by seizing and retaining the proceeds from Plaintiff's and the other Class members' payment of the mandatory student fees.

87.    Defendants deprived Plaintiff and the other Class members of their protected property interests without due process of law by:

(a)    Failing to provide timely notice to Plaintiff and the other Class members, whose identity and contact information Defendants

either knew, or by the exercise or reasonable diligence should have known, of the refundable nature of the mandatory fees;

(b)     Failing to design and implement criteria by which the mandatory fees can be refunded to Plaintiff and the other Class members in light of the shuttering of virtually all on-campus activities due to the COVID-19 pandemic; and

(c)     Failing to design and implement a mechanism by which Plaintiff and the other Class members can obtain a refund of the mandatory fees in light of the shuttering of virtually all on-campus activities due to the COVID-19 pandemic.

88.     Defendants' failure to comply with the requirements of the Due Process Clause of the United States Constitution in the manners outlined above has resulted in substantial detriment to Plaintiff and the other Class members.

89.     Moreover, pursuant to the Takings Clause of the Fifth Amendment, "private property [shall not] be taken for public use, without just compensation."[15]

90.     Defendants violated the Takings Clause in the Fifth Amendment, applied through the Fourteenth Amendment, by failing to return to Plaintiff and the other Class members that portion of the mandatory fees for which they received no benefit.

91.     Neither Plaintiff nor the other Class members have made a knowing and voluntary waiver of their constitutional right under the Fifth Amendment to the United States to be paid just compensation for the taking of their property right in those funds.

---

[15] Although originally intended as a limitation only on the federal government, see *Barron v. Mayor & City Council of Baltimore*, 32 U.S. (7 Pet.) 243, 250-51, 8 L. Ed. 672 (1833), the Takings Clause has long been held to apply to the States through the Due Process Clause of the Fourteenth Amendment. *See Chicago, Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226, 239, 41 L. Ed. 979, 17 S. Ct. 581 (1897).

FIRST AMENDED CLASS ACTION COMPLAINT

92.     Plaintiff and the Class are entitled to just and reasonable compensation for the taking of their property.

### THIRD CLAIM FOR RELIEF

**Breach of Contract**

**Plaintiff and the Other Class Members**

93.     Plaintiff repeats and realleges the allegations in Paragraphs 1-76, above, as if fully alleged herein.

94.     Plaintiff brings this claim individually and on behalf of the other Class members.

95.     Plaintiff and the other Class members entered into contractual agreements with Defendant California State University which provided that Plaintiff and the other Class members would pay fees for or on behalf of students, and in exchange, Defendant California State University would provide services to students.

96.     Defendant White, as President of Defendant California State University, had exclusive authority over the amount, conditions, and time of payment of all fees to be assessed against students of the universities.

97.     Plaintiff and the other Class members fulfilled their end of the bargain to Defendants when they paid the fees for the Spring 2020 semester.

98.     Defendants breached their contracts with Plaintiff and the other Class members when they moved classes online, cancelled on-campus events and activities, and stopped providing services for which the fees were intended to pay.

99.     Even if performance was excused, Defendants cannot retain funds for services they will not and cannot provide.

100.    Defendants retained monies paid by and which belong to Plaintiff and the other Class members, without providing them the benefit of their bargain.

**FOURTH CLAIM FOR RELIEF**

**Unjust Enrichment**

**Plaintiff and the Other Class Members**

101.   Plaintiff repeats and realleges the allegations in Paragraphs 1-76, above, as if fully alleged herein.

102.   Plaintiff brings this claim individually and on behalf of the other Class members and in the alternative to the breach of contract claim brought on behalf of Plaintiff and the other Class members.

103.   Defendants have received a benefit at the expense of Plaintiff and the other Class members to which they are not entitled.  Plaintiff and the other Class members paid fees possessed and controlled by Defendants and did not receive the full benefit of their bargain, while Defendants continue to retain those fees.

104.   Plaintiff and the other Class members paid fees for or on behalf of students, which were intended to cover services for the Spring 2020 semester. In exchange, students were entitled to receive those services for the entire semester.

105.   Defendants moved classes online, cancelled on-campus events and activities, and stopped providing the services the fees were intended to cover.

106.   Defendants have been unjustly enriched by retaining the fees paid by Plaintiff and the other Class members while not providing services for which those fees were paid.  Equity requires Defendants to return to Plaintiff and the other Class members that portion of the mandatory fees for which they received no benefit.

**FIFTH CLAIM FOR RELIEF**

**Conversion**

**Plaintiff and the Other Class Members**

107.   Plaintiff repeats and realleges the allegations in Paragraphs 1-76 above, as if fully alleged herein.

108.   Plaintiff brings this claim individually and on behalf of the other Class members.

109.   Plaintiff and the other Class members have a right to the services that were supposed to be provided in exchange for their payments of the mandatory fees possessed and controlled by Defendants.

110.   Defendants intentionally interfered with the property rights of Plaintiff and the other Class members when they moved all classes to an online learning format, cancelled on-campus events and activities, and discontinued services for which the fees were intended to pay, while retaining the mandatory fees.

111.   Class members demanded the return of that portion of the Spring 2020 semester mandatory fees for which they received no benefits.

112.   Defendants' retention of the mandatory fees paid by Plaintiff and the other Class members without providing the services for which they paid, deprived Plaintiff and the other Class members of the benefits for which the fees were paid.

113.   This interference with the services for which Plaintiff and the other Class members paid, harmed Plaintiff and the other Class members in that Defendants have seized and retained monies that rightfully belong to Plaintiff and the other Class members.

114.   Plaintiff and the other Class members are entitled to the return of their property interest in the mandatory fees paid for the Spring 2020 semester.

<u>SIXTH CLAIM FOR RELIEF</u>

**Injunction**

**Plaintiff and the Other Class Members**

115.   Plaintiff repeats and realleges the allegations in Paragraphs 1-76, above, as if fully alleged herein.

116.   Plaintiff brings this claim individually and on behalf of the other Class members.

117.   Plaintiff and the other Class members have no plain, adequate, or speedy remedy at law, and will suffer significant, permanent, and irreparable harm unless the Court issues preliminary and permanent injunctive relief ordering Defendants to comply with the law, as set forth above, and to return to Plaintiff and the other Class members that portion of the mandatory fees for which they received no benefit.

**SEVENTH CLAIM FOR RELIEF**

**Attorney Fees and Common Fund**

**Plaintiff and the Other Class Members**

118.   Plaintiff repeats and realleges the allegations in Paragraphs 1-76, above, as if fully alleged herein.

119.   Plaintiff, in acting as representative for the other members of the proposed Class, will, by her success in this litigation, create a common fund consisting of all monies improperly received from the improper acquisition and retention of the mandatory student fees without notice and due process that must necessarily be refunded by Defendants to the other Class members.

120.   In creating such a fund, Plaintiff is acting in good faith on behalf of herself and the other Class members and is entitled to be paid for her legal expense in bringing and prosecuting this action under the common fund doctrine and 42 U.S.C. § 1988.

121.   This Court has equitable power to order the payment by Defendants of Plaintiff's legal expense from any funds held by and disgorged from Defendants, or from the common fund thus created.

**VII.   REQUEST FOR RELIEF**

Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in her favor and against Defendants as follows:

FIRST AMENDED CLASS ACTION COMPLAINT

a.  Certifying the Class as requested herein, designating Plaintiff as class representative, and appointing Plaintiff's undersigned counsel as Class Counsel;

b.  Declaring that Plaintiff and the other Class members have a common law property interest in that portion of the prepaid mandatory fees for which they received no benefit;

c.  Declaring that Defendant seized and retained Plaintiff's and the other Class members' property interest in the mandatory fees without notice and due process in violation of the California Constitution, Article I, §§ 7, 19, and 20, and the United States Constitution, Fifth and Fourteenth Amendments;

d.  Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

e.  Granting restitution and disgorgement of Plaintiff's and the other Class members' property to them, in the form of an order requiring Defendants to refund the mandatory fees taken from Plaintiff and the other Class members that Defendants obtained by engaging in conduct that violates the State and Federal Constitutions;

f.  Entering a permanent injunction restraining Defendants from engaging in future unlawful and/or improper seizures of the students' money, as alleged in this Amended Complaint;

g.  Awarding statutory relief, to the maximum extent allowed, on the bases to be proven at trial;

h.  Awarding Plaintiff her reasonable attorneys' fees, costs, and expenses; and

i.  Awarding such other and further relief as may be just and proper.

FIRST AMENDED CLASS ACTION COMPLAINT

## VIII.  JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: July 14, 2020

/s/ C. Moze Cowper
**COWPER LAW PC**
C. Moze Cowper
Noel E. Garcia
10880 Wilshire Boulevard, Suite 1840
Los Angeles, California  90024
Tel.:  877-529-3707

**DiCELLO LEVITT GUTZLER LLC**
Adam J. Levitt*
Laura E. Reasons*
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Tel.:  312-214-7900

**MATTHEW S. MILLER LLC**
Matthew S. Miller*
77 West Wacker Drive, Suite 4500
Chicago, Illinois  60601
Tel.:  312-741-1085

*Admitted Pro Hac Vice*

***Counsel for Plaintiff and Proposed Class***

1

## CERTIFICATE OF SERVICE

I hereby certify that on the 14 day of July 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, Western Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

Dated:  July 14, 2020                                    /s/ Noel E. Garcia
                                                             Noel E. Garcia, Esq.

FIRST AMENDED CLASS ACTION COMPLAINT