UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-03833-SVW-SK; 2:20-cv-04421-SVW-SK | Date | 1/13/2021 |
|---|---|---|---|
| Title | *Akayla Miller v. Board of Trustees of the California State University et al.*; *Helen Rifat v. Board of Trustees of the California State University et al.* | | |

JS-6

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | | N/A |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| N/A | | N/A |

**Proceedings:** ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [52, 62]

## I. Introduction

Before the Court are motions to dismiss the First Amended Complaint ("FAC") in two consolidated cases bringing § 1983 and state law claims against the Board of Trustees of the California State University and Chancellor Timothy P. White. For the reasons articulated below, the motions to dismiss are GRANTED without leave to amend.

## II. Factual and Procedural Background

### a. COVID-19's Effect on CSU

California State University ("CSU") is a public university system comprised of 23 campuses, the largest university system in the country. Miller FAC, Dkt. 46 ¶ 13; Rifat FAC, Dkt. 61 ¶ 13. CSU was created by the California legislature to provide undergraduate through graduate instruction. *See* Cal. Educ. Code § 66010.4(b).

In March 2020, state and local officials enacted numerous measures to mitigate the spread of COVID-19, culminating in a statewide shelter-in-place order issued by Governor Gavin Newsom on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-03833-SVW-SK; 2:20-cv-04421-SVW-SK | Date | 1/13/2021 |
|---|---|---|---|
| Title | *Akayla Miller v. Board of Trustees of the California State University et al.*; *Helen Rifat v. Board of Trustees of the California State University et al.* | | |

March 19, 2020. Miller FAC ¶¶ 29-32; Rifat FAC ¶¶ 28-31. These measures dramatically altered daily operations in the Cal State University system.

In response to these measures and the evolving health crisis, CSU officials, including Defendant Chancellor White, required all classes to transition to remote education, prevented students from returning to campus in most cases, and limited access to on-campus activities, services, and facilities. Miller FAC ¶¶ 35-38; Rifat FAC ¶¶ 34-37. On May 12, 2020, Chancellor White announced that, with limited exceptions, the CSU system would primarily deliver courses virtually during fall 2020. Miller FAC ¶ 36; Rifat FAC ¶ 38.

### b. CSU – Tuition and Fee Policies

The California Education Code authorizes the Board of Trustees to set fees and allows them to "by rule, provide for the refund in whole or part of such fees, rents, deposits, and charges collected in error or collected for facilities, services, or materials not utilized." Cal. Educ. Code § 89700(a). Chancellor White is empowered with broad authority by the Board of Trustees to establish, oversee, and adjust fees. Miller FAC ¶ 17; Rifat FAC ¶ 17.

CSU divides the charges for students into two categories: fees and tuition. Miller FAC ¶¶ 23-24 & n.4. Fees are further subdivided into seven distinct categories: Health Facilities, Health Services, Instructionally Related Activities, Materials Services, Facilities, Student Success Fee, Student Association, and Student Center. *Id.* Line-item amounts are provided for each category of fees at each campus in the CSU system. *See id.* ¶ 24 n.4. When the complaint was filed, total fees ranged by campus from $847 to $4,201. Miller FAC ¶ 25. Students also pay tuition, an amount that is uniform across CSU campuses.

The California Education Code contains special provisions for the disposition of fees collected for specified purposes. "Fees and charges for services, materials, and facilities" are deposited into a trust fund and "shall be used solely to meet the costs of providing these services, materials, and facilities." Cal. Educ. Code § 89721(g). "Fees for instructionally related activities" are also deposited into a trust fund, and the trustees "have all authority necessary to administer and use the fees and revenues received and deposited to support such instructionally related activities." *Id.* § 89721(g).

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-03833-SVW-SK; 2:20-cv-04421-SVW-SK | Date | 1/13/2021 |
|---|---|---|---|
| Title | *Akayla Miller v. Board of Trustees of the California State University et al.*; *Helen Rifat v. Board of Trustees of the California State University et al.* | | |

Refund policies are governed by regulation. The applicable regulation provides that "[t]uition and mandatory fees may be refunded if the student or an authorized representative petitions the university demonstrating exceptional circumstances and the chief financial officer of the university or designee makes a determination that the tuition and mandatory fees have not been earned by the university." Cal. Code Regs. tit. 5, § 41802(e)(2). By contrast, other provisions require CSU – using language such as "shall" and "entitled" – to refund tuition and fees under specified circumstances such as cancellation, withdrawal, when tuition or fees are collected in error, a course is cancelled, the student is ineligible, or the student is activated for compulsory military service. *Id.* § 41802(b)-(e)(1).

On March 19, 2020, CSU issued an interim refund policy regarding the COVID-19 pandemic. The policy provided that CSU would "refund fees for materials, services, and facilities for which students have paid but that the CSU is unable to provide." California State University, Interim CSU Refund policies for Tuition and Fees, https://calstate.policystat.com/policy/7826195/latest/ (URL included in complaint, *see* Miller FAC ¶¶ 54-55 & n.13; Rifat FAC ¶ 67 & n.28). The policy specified that "[t]uition and other campus mandatory fees will not be refunded except as provided for by campus refund policies and procedures consistent with Title 5 CCR § 41802." Miller FAC ¶ 54; Rifat FAC ¶ 67.

### c. Instant Lawsuits

Plaintiff Miller is a student at Sonoma State University who left campus in March 2020 and has not received a refund of any moneys that she paid for the spring 2020 semester. Miller FAC ¶ 12. Plaintiff Rifat is a student at California Polytechnic State University, San Luis Obispo who left campus in March 2020 and has not been refunded any moneys that she paid for the spring 2020 semester. Rifat FAC ¶ 12. Plaintiffs seek to represent classes of all individuals who have paid tuition or fees for CSU students in the Spring 2020 semester. Miller FAC ¶ 66; Rifat FAC ¶ 73. The cases have been consolidated. Dkt. 60.

Plaintiffs do not allege that they have requested refunds from their CSU campuses. *See generally* Miller FAC; Rifat FAC.

Plaintiffs assert section 1983 and state law claims against both the Board of Trustees of the California State University and Chancellor White, in both his official and individual capacities.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-03833-SVW-SK; 2:20-cv-04421-SVW-SK | Date | 1/13/2021 |
|---|---|---|---|
| Title | *Akayla Miller v. Board of Trustees of the California State University et al.*; *Helen Rifat v. Board of Trustees of the California State University et al.* | | |

Plaintiffs allege that CSU's failure to repay fees and tuition violated their procedural due process rights and amounted to an unconstitutional taking. Miller FAC ¶¶ 82-92; Rifat FAC ¶¶ 89-99, 130-40. Plaintiffs also bring causes of action for breach of contract, unjust enrichment, and conversion. Miller FAC ¶¶ 93-114; Rifat FAC ¶¶ 100-21, 141-62.

In addition to damages, Plaintiffs seek injunctive and declaratory relief for the return of the allegedly wrongfully retained tuition and fees. Miller FAC ¶¶ 115-17; Rifat FAC ¶¶ 122-24, 163-65.

**III.     Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-03833-SVW-SK; 2:20-cv-04421-SVW-SK | Date | 1/13/2021 |
|---|---|---|---|
| Title | *Akayla Miller v. Board of Trustees of the California State University et al.*; *Helen Rifat v. Board of Trustees of the California State University et al.* | | |

### IV. Application[1]

#### a. CSU and Official Capacity Damages Claims against Chancellor White

The Eleventh Amendment provides that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) (citations omitted). That immunity extends to damages claims against state officials in their official capacities. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (citing *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." (citation omitted)).

The Ninth Circuit has held that a CSU campus is an arm of the state for purposes of the Eleventh Amendment. *Jackson v. Hayakawa*, 682 F.2d 1344, 1349-50 (9th Cir. 1982); *Lee v. Bd. of Trs. Of the Cal. State Univ., Fullerton*, 2015 WL 4272752, at *7-*8 (C.D. Cal. 2015); *see also Feied v. Regents of the Univ. of Cal.*, 188 F. App'x 559, 561 (9th Cir. 2006) (collecting cases holding that the Regents of the University of California are entitled to Eleventh Amendment immunity); *Jackson*, 682 F.2d at 1350 ("California State Colleges and Universities have even less autonomy than the University of California."). "To determine whether a government entity is an arm of the state, we examine the five factors set forth in *Mitchell*: (1) whether a money judgment would be satisfied out of state funds, (2) whether the entity performs central government functions, (3) whether the entity may sue or be sued, (4) whether the entity has the power to take property in its own name or only the name of the state, and (5) the corporate status of the entity." *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017). In light of *Jackson*, it is unnecessary to analyze these factors to conclude that state law treats CSU as an arm of the state.

Plaintiffs argue that their claims fall within an exception for "suit[s] to recover property in a state's possession." *North East Med. Servs., Inc. v. Cal. Dep't of Health Care Servs.*, 712 F.3d 461, 469 (9th Cir. 2013). The Ninth Circuit cases applying this exception, however, concern discrete sums of

---

[1] The Court has reviewed a recent order granting a motion to dismiss in a case raising similar claims against the University of California. *See Brandmeyer v. Regents of University of California*, 2020 WL 6816788 (N.D. Cal. 2020). The Court finds this order persuasive and draws from its reasoning on the Eleventh Amendment and qualified immunity issues.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-03833-SVW-SK; 2:20-cv-04421-SVW-SK | Date | 1/13/2021 |
|---|---|---|---|
| Title | *Akayla Miller v. Board of Trustees of the California State University et al.*; *Helen Rifat v. Board of Trustees of the California State University et al.* | | |

money held for the benefit of identifiable individuals. *See Fowler v. Guerin*, 899 F.3d 1112, 1115-16, 1119 (9th Cir. 2018) (Eleventh Amendment did not bar suit to recover uncredited interest from teachers' retirement accounts); *Taylor v. Westly*, 402 F.3d 924, 928-29, 935 (9th Cir. 2005) (Eleventh Amendment did not bar suit to recover unconstitutionally seized property pursuant to state escheat system). By contrast, Eleventh Amendment immunity does apply when a suit seeks to impose a monetary award requiring the state to pay damages from its own coffers. *See Edelman*, 415 U.S. at 665-66 (Eleventh Amendment barred suit to recover wrongfully withheld benefits); *North East Med. Servs., Inc.*, 712 F.3d at 466, 470 (Eleventh Amendment barred health care provider's suit to recover Medicare reimbursements alleged to have been wrongfully collected by state).

Here, Plaintiffs do not seek to recover their own property. Rather, Plaintiffs seek to recover from a large pool of commingled CSU funds that are not tied to individual students. They seek to recover amounts to be calculated based on a reduction of services and diminished educational quality during the pandemic. This is essentially a request for monetary relief rather than for the return of property.

Plaintiffs' primary argument to resist this conclusion is that Cal. Educ. Code §§ 89721(g)-(h) set limits on the use of fees to designated purposes. Section 89721(g) provides that "[f]ees and charges for services, materials, and facilities … shall be used solely to meet the costs of providing these services, materials, and facilities." Section 89721(h) provides that "[f]ees for instructionally related activities and revenues derived from the conduct of the instructionally related activities" are to be used "to support such instructionally related activities." These fees are required by statute to be deposited into and maintained in a handful of qualifying types of campus or systemwide trust accounts. *See id.* § 89721. Unlike the cases cited above, these statutes do not provide that mandatory fees are to be held for the benefit of individual students. *Cf. Fowler*, 899 F.3d at 1120 ("Washington's sovereign immunity shields the State's general fund, not investment funds held for the benefit of its employees."); *Taylor*, 402 F.3d at 935 ("Properly viewed, the claim is for return of property held in trust for the owners, not for compensation for property full title to which has passed to the state."). Moreover, under Cal. Educ. Code § 89721, fees are deposited not into trust accounts for individual students but systemwide trust accounts that are part of the State Treasury, *see* Cal. Educ. Code § 89722, or segregated accounts under the Centralized State Treasury System, *see* Cal. Gov. Code § 16305 *et seq.* Plaintiffs' claims therefore seek to recover government property rather than reclaiming their own property. The Court's subsequent analysis regarding Plaintiffs' purported property interest also bolsters this conclusion.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-03833-SVW-SK; 2:20-cv-04421-SVW-SK | Date | 1/13/2021 |
|---|---|---|---|
| Title | *Akayla Miller v. Board of Trustees of the California State University et al.*; *Helen Rifat v. Board of Trustees of the California State University et al.* | | |

Therefore, under the Eleventh Amendment, the Court GRANTS the motion to dismiss in favor of the Board of Trustees and on the damages claim against Chancellor White in his official capacity.

**b.  Personal Capacity Claims against Chancellor White – Qualified Immunity**

**i. Qualified Immunity – In General**

"An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (citation omitted). The qualified immunity inquiry involves two questions. First, courts ask whether the facts alleged show that the officer's conduct violated a constitutional right. Second, courts ask whether the right was clearly established in light of the specific context of the case. *See Tuuamalemalo v. Greene*, 946 F.3d 471, 476-77 (9th Cir. 2019).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-03833-SVW-SK; 2:20-cv-04421-SVW-SK | Date | 1/13/2021 |
|---|---|---|---|
| Title | *Akayla Miller v. Board of Trustees of the California State University et al.*; *Helen Rifat v. Board of Trustees of the California State University et al.* | | |

### ii. Takings Claim

#### A. Plaintiffs Fail to Allege a Takings Violation[2]

The first step in evaluating a takings claim is to determine "whether the subject matter is 'property' within the meaning of the Fifth Amendment." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1002 (9th Cir. 2007) (citation omitted). "The Takings Clause protects property interests created by independent sources such as state law, but does not itself create property interests." *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1081 (9th Cir. 2015) (citation omitted).

The key issue in analyzing whether subject matter constitutes property protected by the Takings Clause is "the certainty of one's expectation in the property." *Engquist*, 478 F.3d at 1002. "[A] mere unilateral expectation or an abstract need is not a property interest entitled to protection." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161 (1980). "[I]f the property interest is 'contingent and uncertain' or the receipt of the interest is 'speculative' or 'discretionary,' then the government's modification or removal of the interest will not constitute a taking." *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d at 1081 (citation omitted). The Ninth Circuit has thus rejected takings challenges when a government imposes conditions on recovering funds if the recovery is

---

[2] The Court notes that Plaintiffs do not allege that they have submitted requests for reimbursement as required by Cal. Code Regs. tit. 5, § 41802(e)(2). *See generally* Miller FAC; Rifat FAC. While *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019) eliminated the requirement to seek compensation in state court, it left in place the requirement that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Pakdel v. City and Cty. of San Francisco*, 952 F.3d 1157, 1163 (9th Cir. 2020) (citing *Williamson Cty. Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985)). This finality requirement has also been applied to procedural due process claims. *See Traweek v. City and Cty. of San Francisco*, 920 F.2d 589, 593-94 (9th Cir. 1990) (citation omitted). However, this finality requirement is prudential. *See Pakdel*, 952 F.3d at 1169 ("*Williamson County*'s ripeness requirements are prudential, not jurisdictional."). The Court does not enforce the finality requirement for two reasons. First, because Plaintiffs allege a *per se* taking, which would be exempted from the finality requirement, the Court must reach the merits to determine whether a *per se* taking actually occurred. *See Fowler*, 899 F.3d at 1118. Second, the Court would reach the same conclusion on the merits of Plaintiffs' constitutional claims even if Plaintiffs' reimbursement requests were denied, and therefore judicial economy would not favor enforcing the finality requirement in this case. *See Guggenheim v. City of Goleta*, 638 F.3d 1111, 1118 (9th Cir. 2010) (en banc).

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-03833-SVW-SK; 2:20-cv-04421-SVW-SK | Date | 1/13/2021 |
|---|---|---|---|
| Title | *Akayla Miller v. Board of Trustees of the California State University et al.*; *Helen Rifat v. Board of Trustees of the California State University et al.* | | |

uncertain or discretionary. *See id.* (activation fees for workers' compensation liens); *Engquist*, 478 F.3d at 1002 (allocation of punitive damages award). By contrast, diminishing the amount of an interest to which a plaintiff is legally entitled could constitute a taking. *See Webb's*, 449 U.S. at 163 (interest on interpleaded funds).

Here, California law does not create a certain expectation that students would recover tuition and mandatory fees under these circumstances. By statute, the California legislature has invested broad discretion in the Trustees to set refund policies. *See* Cal. Educ. Code § 89700(a) ("The trustees … may, by rule, provide for the refund in whole or part of such fees, rents, deposits, and charges collected in error or collected for facilities, services, or materials not utilized."). Pursuant to that statute, CSU adopted a regulation governing refunds, which has the force of law. *See Zumwalt v. Trs. of Cal. State Colls.*, 33 Cal. App. 3d 665, 675 (1973) ("Rules of an administrative agency [including CSU] implementing a statutory delegation of authority have the force of law." (citation omitted)). That regulation does require a refund under certain specified circumstances. *See* Cal. Code. Regs. tit. 5, § 41802(e)(1) ("Tuition and mandatory fees *shall* be refunded and an administrative charge *may not* be retained if" the fees are erroneously collected, a course was canceled, the student is determined to be ineligible, or if the student is activated for compulsory military service) (emphasis added); *id.* § 41802(d) (a student adjusting registration consistent with campus procedures "shall be entitled to a refund"). However, the refund provision applicable in this case leaves discretion to the chief financial officer of the university or a designee to award a refund. It provides: "Tuition and mandatory fees *may* be refunded if the student or an authorized representative petitions the university for a refund demonstrating exceptional circumstances and the chief financial officer of the university or designee makes a determination that the tuition and mandatory fees have not been earned by the university." *Id.* § 41802(e)(2) (emphasis added). Because section 41802(e) does not require a refund under these circumstances, Plaintiffs cannot show that they have the certainty of expectation necessary for a property interest protected by the Takings Clause.

Plaintiffs argue that the regulation cannot defeat their Takings Claim because it cannot supersede a property right existing independently of the regulation, citing *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194 (9th Cir. 1998). In *Schneider*, the Ninth Circuit held that prisoners did have a property interest in the interest accruing on funds in their personal accounts. *Id.* at 1200-01. The Court cited "the 'interest follows principal' rule," which has an 18th-century pedigree and had been invoked to find

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-03833-SVW-SK; 2:20-cv-04421-SVW-SK | Date | 1/13/2021 |
|---|---|---|---|
| Title | *Akayla Miller v. Board of Trustees of the California State University et al.*; *Helen Rifat v. Board of Trustees of the California State University et al.* | | |

takings violations in two Supreme Court cases. *Id.* at 1200. However, Plaintiffs cite no analogous common law rule applicable to this case. Their references to the common law doctrine of *quantum valebant* are unpersuasive. That doctrine applies in the entirely different situation when "the defendant 'has used for its benefit property of (plaintiff) in such manner and under such circumstances that the law will impose a duty of compensation therefor." *Weitzenkorn v. Lesser*, 40 Cal.2d 778, 794 (1953) (citation omitted).[3]

To the extent a background legal framework governs students' interest independent of the refund regulation, it is contract law. *See Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 824 (2007) ("[T]here seems to be almost no dissent from the proposition that the relationship between a public post-secondary educational institution and a student is contractual in nature." (citation omitted and cleaned up)). Plaintiffs argue that they had an implied contract with CSU, which included rights to a refund under these circumstances, and that the failure to refund tuition and fees therefore constitutes a taking. However, courts have been reluctant to allow "section 1983 to convert every breach of contract claim against a state into a federal claim." *San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cty.*, 825 F.2d 1404, 1409 (9th Cir. 1987).

Moreover, Plaintiffs' contract-based argument proceeds by simply disregarding the refund regulation. Plaintiffs do not allege that Defendants made any promise or manifested any conduct giving rise to a reasonable expectation of more generous refund policies. *Cf. Kashmiri*, 156 Cal. App. 4th at 833 (express promise not to raise fee was incorporated into implied-in-fact contract between students and university). Without any such allegations, even assuming the regulation would not simply supersede any implied-in-fact contract, the contract would have to be construed consistent with the regulation. *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1386 (2012) ("As a general rule, all applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter the contract and form a part of it, without any

---

[3] Moreover, while the statute in *Schneider* took Plaintiffs' interest and deposited it into a common fund, the Ninth Circuit has later held in the prisoners' context that a party does not have a protected interest in property that state law prevents him from presently accessing. *See Ward v. Ryan*, 623 F.3d 807, 812 (9th Cir. 2010). Similarly, the regulation here does not appropriate personal funds for public use; it can prescribe a procedure and a standard governing when and whether a refund can be obtained without necessarily violating any background property principles applying to the retention of those funds.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-03833-SVW-SK; 2:20-cv-04421-SVW-SK | Date | 1/13/2021 |
|---|---|---|---|
| Title | *Akayla Miller v. Board of Trustees of the California State University et al.*; *Helen Rifat v. Board of Trustees of the California State University et al.* | | |

stipulation to that effect, as if they were expressly referred to and incorporated." (citation omitted and cleaned up)). Holding students to the terms of an existing contract obviously does not infringe on any constitutionally protected interest in that contract.

For these reasons, the Court concludes that Plaintiffs have failed to allege facts supporting a property interest protected by the Takings Clause. Consequently, Chancellor White is entitled to qualified immunity on Plaintiffs' takings claim under the first step of the analysis.

### B. If Plaintiffs Did Allege a Takings Violation, the Right Would Not Be Clearly Established

Proceeding to the second step of the qualified immunity analysis, even if the Court's conclusions regarding Plaintiffs' takings claim are incorrect, Chancellor White would nevertheless be entitled to qualified immunity.

"An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it,' … meaning that 'existing precedent … placed the statutory or constitutional question beyond debate." *City and Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)). The right must be clearly established not in the abstract but "in light of the specific context of the case." *Scott v. Harris*, 550 U.S. 372, 377 (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Sheehan*, 135 S. Ct. at 1774 (quoting *al-Kidd*, 131 S. Ct. at 2085).

As the discussion above demonstrates, Plaintiffs cite no cases in which a court has found a Takings Clause violation under remotely similar circumstances. Here, framed in the most general terms, Plaintiffs claim that Chancellor White committed a taking by failing to preemptively refund payments for government services that must be delivered in an unforeseen method due to emergency circumstances. Plaintiffs have not cited cases from the public university context – or any other analogous context – recognizing an interest protected by the Takings Clause in previously paid tuition or

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-03833-SVW-SK; 2:20-cv-04421-SVW-SK | Date | 1/13/2021 |
| Title | *Akayla Miller v. Board of Trustees of the California State University et al.*; *Helen Rifat v. Board of Trustees of the California State University et al.* | | |

fees.  More saliently, they have also failed to cite any case recognizing a protected interest in a refund made discretionary by state law.  Given this state of the law, the Court cannot conclude that Chancellor White was plainly incompetent or knowingly violated the law.  Accordingly, Chancellor White did not violate clearly established law and is entitled to qualified immunity.

### iii. Procedural Due Process Claim

#### A.  Plaintiffs Fail to Allege a Protected Property Interest

Plaintiffs also fail to allege that they have been deprived of property protected by the Due Process Clause.

To bring a procedural due process claim, a person must have a "legitimate claim of entitlement … defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972).  As with property protected by the Takings Clause, "[a] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).  "Whether an expectation of entitlement is sufficient to create a property interest will depend largely upon the extent to which the statute contains mandatory language that restricts the discretion of the decisionmaker." *Doyle v. City of Medford*, 606 F.3d 667, 672-73 (9th Cir. 2010) (quoting *Allen v. City of Beverly Hills*, 911 F.2d 367, 370 (9th Cir. 1990)).  Even a law mandating government action under specified circumstances may not create a property interest if it lacks a particularized standard, is indeterminate, or creates functional discretion.  *Id.* at 675.

As discussed above, section 41802(e)(2) gives discretion to grant a refund under these circumstances.  By contrast to other provisions of the same regulation, which use mandatory "shall" or "entitled" language, the refund provision at issue here says that "[t]uition and mandatory fees *may* be refunded…."  Moreover, even setting aside the use of "may," the standard for determining whether a refund is appropriate is indeterminate and creates functional discretion.  Section 41802(e)(2) requires that a petitioning student demonstrate "exceptional circumstances" and that the chief financial officer or a designee of the university determine that "the tuition and mandatory fees have not been earned by the university."  Cal. Code. Regs. tit. 5, § 41802(e)(2).  These standards are vague and open-ended, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-03833-SVW-SK; 2:20-cv-04421-SVW-SK | Date | 1/13/2021 |
|---|---|---|---|
| Title | *Akayla Miller v. Board of Trustees of the California State University et al.*; *Helen Rifat v. Board of Trustees of the California State University et al.* | | |

accordingly gives at least functional discretion to the chief financial officer or designee charged with making the determination. Therefore, Plaintiffs lack a legitimate expectation of entitlement to a refund under section 41802(e)(2).

Because Plaintiffs fail to allege a deprivation of property protected by the Due Process Clause, Chancellor White is entitled to qualified immunity on the procedural due process claim.

### B. If Plaintiffs Did Allege a Procedural Due Process Violation, the Right Would Not Be Clearly Established

Even if the Court were incorrect that Plaintiffs have a property interest in tuition and fees protected by the Due Process Clause, Plaintiffs have not shown that Chancellor White's refund policy violates clearly established law. As explained above, existing law must place the question beyond debate for a state official's conduct to violate clearly established law. *Sheehan*, 135 S. Ct. at 1774. Without defining the right at issue "at a high level of generality," *id.* at 1775-76, Plaintiffs cite no case demonstrating that it was beyond debate that Chancellor White was required to preemptively refund tuition and fees. Nor have Plaintiffs cited a case demonstrating that there is even a constitutionally protected property interest in a discretionary refund – in the context of schools or any analogous government program or service. Consequently, Plaintiffs have failed to demonstrate a violation of clearly established law and Chancellor White is entitled to qualified immunity.

### c. Official Capacity Claim Against Chancellor White – Injunctive and Declaratory Relief

Plaintiffs argue that, even if qualified immunity precludes the damages claim against Chancellor White in his personal capacity, they may still bring a claim for prospective injunctive relief under *Ex Parte Young*, 209 U.S. 123 (1908). This argument fails for two reasons.

First, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief … and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman*, 415 U.S. at 677 (citation omitted). "A remedy for past injury, even if it purports to be an injunction against state officers requiring the future payment of

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-03833-SVW-SK; 2:20-cv-04421-SVW-SK | Date | 1/13/2021 |
|---|---|---|---|
| Title | *Akayla Miller v. Board of Trustees of the California State University et al.*; *Helen Rifat v. Board of Trustees of the California State University et al.* | | |

money, is barred because relief 'inevitably come[s] from the general revenues of the State …, and thus … resembles far more closely [a] monetary award against the State itself,' which is forbidden under the Eleventh Amendment." *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008) (quoting *Edelman*, 415 U.S. at 665).

Here, Plaintiffs seek a refund for tuition and mandatory fees allegedly overpaid for the spring 2020 semester. Their request for injunctive relief only seeks an order for "Defendants to comply with the law, as set forth above, and to return to Plaintiff and the other Class members that portion of the mandatory fees for which they received no benefit." Miller FAC ¶ 117; Rifat FAC ¶ 124. The award which Plaintiffs seek to recover would come from university trust funds, Cal. Educ. Code §§ 89721(g)-(h), which are made part of the state treasury, *id.* § 89722; Cal. Gov. Code § 16305 *et seq*. Moreover, the purpose of the injunctive relief would essentially be compensation for a past injury. Accordingly, Plaintiffs' complaint properly seeks retrospective monetary relief against the state and the official capacity claim, although styled as seeking prospective relief, is barred by the Eleventh Amendment. *See Edelman*, 415 U.S. at 666-69.

The very same reasoning applies to Plaintiffs' request for declaratory relief. *See National Audubon Society, Inc. v. Davis*, 307 F.3d 835, 847-488 (9th Cir. 2002).

Second, even if Plaintiffs were properly seeking prospective declaratory or injunctive relief exempt from the Eleventh Amendment, their claims would still be dismissed. As explained above, Plaintiffs' takings and procedural due process claims fail on the merits.

Therefore, Plaintiffs' claims for injunctive and declaratory relief against Chancellor White in his official capacity must also be dismissed.

### d. State Law Claims

Plaintiffs' remaining claims arise under state law – for breach of contract, conversion, and unjust enrichment. The Court only has supplemental jurisdiction over these claims. "A court may decline to exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'" *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (quoting 28 U.S.C.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-03833-SVW-SK; 2:20-cv-04421-SVW-SK | Date | 1/13/2021 |
|---|---|---|---|
| Title | *Akayla Miller v. Board of Trustees of the California State University et al.*; *Helen Rifat v. Board of Trustees of the California State University et al.* | | |

§ 1367(c)(3)). Because the constitutional claims over which the Court has original jurisdiction have been dismissed at an early stage in the case, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

      e.  **Leave to Amend**

In evaluating a request for leave to amend, we consider the following factors: "undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citation omitted). "Leave to amend is warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and do not contradict the allegations in the original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (citation omitted).

The Court concludes that leave to amend is inappropriate under the circumstances of this case. As the Court explained above, Plaintiffs' takings and procedural due process claims are without merit because they do not show – and no amendment to the pleadings could show – that they have a protected property interest in tuition and mandatory fees subject to the refund provision in section 41802(e)(2). Moreover, even if that conclusion is incorrect, Plaintiffs have failed to present a sufficiently analogous case to show that any constitutional right that was violated in this case was clearly established.

**V.**  **Conclusion**

For the foregoing reasons, the motions to dismiss in both consolidated cases are GRANTED without leave to amend.

IT IS SO ORDERED.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |